# IN THE UNITED STATES OF DISTRICT COURT
# MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| **Canal Indemnity Company,** | |
| Plaintiff(s), | |
| v. | Civil Action No. CV-2005-778-T |
| **WLS, Inc. D/b/a S & H Mobile Homes, CIS Financial Services, Inc., f/k/a Cavalier Acceptance Corp.; Greentree-AL,LLC; GreenTree Servicing, LLC; Ruth Barron; John D. Barron,** | |
| Defendant(s). | |

## PLAINTIFF CANAL INDEMNITY COMPANY'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT THEREOF

**COMES NOW**, the Plaintiff, Canal Indemnity Company (hereinafter "Canal"), and moves the Court to enter, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, an Order granting a summary judgment in its favor with regard to its declaratory judgment complaint, and further requests the Court to declare that Canal does not owe coverage and has no duty to defend and/or indemnify WLS, Inc. d/b/a S & H Mobile Homes (hereinafter "S&H") in the lawsuit styled *John D. Barron, plaintiff versus WLS, Inc. d/b/a S & H Mobile Homes, Cavalier Acceptance Corp, Greentree, and Ruth Barron, defendants, in the Circuit Court of Chilton County, Alabama (CV-2005-31-F)* (hereinafter "the underlying lawsuit"), and Canal further moves the Court to make the order a final order in accordance with Rule 54(b), Fed.R.Civ.P., as there is no just reason for delay.

Pursuant to Rule 56(c)(1) of the Federal Rules of Civil Procedure, Canal submits the following narrative statement of undisputed facts:

## A. NARRATIVE STATEMENT OF UNDISPUTED FACTS

1. On or about January 24, 2005, John D. Barron, the plaintiff in the underlying lawsuit, filed a three-count complaint against defendants S&H, Cavalier Acceptance Corp., Greentree, Ruth Barron and Fictitious parties A through E in the Circuit Court of Chilton County, Alabama. (A copy of the underlying Complaint, is attached as **Exhibit "A"**, p. 1).

2. According to Mr. Barron's complaint, on <u>April 11, 2000</u>, the underlying defendants "caused or allowed Plaintiff's signature to be forged on legal documents in order to purchase a mobile home more particularly described as a 44' x 28' Cavalier 2000 model, serial number ALCAO899544S33004BA in the name of the Plaintiff." (**Exhibit "A"**, p. 2 ¶ 6). The underlying complaint further alleges "that the Plaintiff's name was forged to said legal documents and those documents necessary to purchase and finance the mobile home without the plaintiff's permission or consent." (**Exhibit "A"**, pp. 2-3 ¶ 6).

3. Mr. Barron alleges that in <u>November of 2003</u>, his daughter, Cherry Barron, discovered through a credit report on her father that the mobile home had been purchased and financed in Mr. Barron's name on April 11, 2000. (**Exhibit "A"**, p. 3 ¶ 7). According to the complaint, Mr. Barron is allegedly responsible to pay $146,284.40 for a mobile home that he did not purchase. (**Exhibit "A"**, p. 3 ¶ 8). Mr. Barron's complaint alleges the following claims against the underlying defendants:

    a. <u>Count I</u> of the complaint alleges a claim for **Forgery** against all of the underlying defendants. (**Exhibit "A"**, p. 3-5 ¶¶ 12-20). Specifically, Mr.

Barron asserts that his signature was forged on a Retail Installment Contract and Security Agreement and other legal documents for the purpose of purchasing and/or financing the mobile home. **(Exhibit "A", pp. 3-4 ¶ 13).** Mr. Barron asserts that *"the forgeries were completed in an attempt to injure and/or defraud the plaintiff"* and that the conduct was felonious under Alabama Code § 6-5-370 (1975). **(Exhibit "A", p. 4 ¶¶ 14 and 16).**

b. Count II of the Complaint alleges a claim for **Fraudulent Suppression** against all of the underlying defendants. **(Exhibit "A", pp. 5-7 ¶¶ 21-27).** Mr. Barron claims that the underlying defendants used his personal information to purchase a mobile home, allowed his named to be forged to legal documents, suppressed the identity of the person who forged his signature, suppressed the identify of the persons who were in possession the mobile home and caused him to owe $146,284.40 for a mobile home that he did not agree to purchase. **(Exhibit "A", pp. 5-6 ¶ 22 (a) through (e)).** He alleges that the underlying defendants owed a duty to him to disclose the facts to him, and that each of the defendants benefitted from the wrongful conduct. **(Exhibit "A", p. 6 ¶¶ 23 and 25).** He further alleges that he did not discover the fraudulent suppression until November 2003 when he obtained a credit report. **(Exhibit "A", p. 6 ¶ 26).**

c. Count III of the Complaint alleges a claim for **Civil Conspiracy** against all of the underlying defendants. **(Exhibit "A", pp. 7-8 ¶ 28-32).** Mr. Barron claims that the defendants *"acted in a manner that Plaintiff would be*

*damaged*" through the criminal forgery of his signature, conspiring to complete the forgeries and sales, financing and insurance transactions, conspiring to cover up the forgeries, and failing to property investigate to correct the acts of the defendants' agents and employees. (**Exhibit "A"**, p. 7 ¶¶ 30-31 (a) through (d)).

4. Mr. Barron alleges the following damages with respect to each of the above-referenced legal claims:

> "he has incurred legal liabilities created by the documents, including the responsibility and commitment to pay for a mobile home that he did not purchase; his credit has been encumbered by the loan for the 2000 mobile home; his credit has been diminished by negative reporting for late payments on the loan; collection activities have been commenced against the Plaintiff; Plaintiff has suffered anxiety, worry, mental anguish, emotional distress, inconvenience, embarrassment and other incidental damages."

(**Exhibit "A"**, pp. 4-5 ¶ 20, p. 6 ¶ 27, p. 7 ¶ 32).

5. Canal issued a Commercial General Liability ("CGL") Insurance policy, bearing policy number GL20269, to S&H with effective dates of <u>January 26, 2004</u> to <u>January 26, 2005</u>. (A certified copy of the policy is attached as **Exhibit "B"**[1], p. 1).

6. Canal's CGL policy contains the following pertinent provisions and terms:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

. . .

**SECTION I - COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

---

[1] For the Court's convenience, each of the pages of Canal's policy has been labeled "Canal Indemnity Co. Policy" and then separately numbered in the bottom-center of each page.

1. **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. ...However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. ...

        (1) ...

        (2) ...

    b.  This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        (2) The "bodily injury" or "property damage" occurs during the policy period.

    c.  ...

. . .

(**Exhibit "B"**, Canal policy, p. 24 of 40). The policy also included the following definitions:

**SECTION V - DEFINITIONS**

. . .

3.  "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

. . .

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

15. "Property damage" means:

Case 2:05-cv-00778-WKW-CSC   Document 27   Filed 12/20/2005   Page 6 of 15

Canal v. WLS, INC. d/b/a S & H Mobile Homes, et. al.
Canal's Motion for Summary Judgment and Brief

  a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it; or

  b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

. . .

(**Exhibit "B"**, Canal policy, p. 33 ¶ 3, p. 35 ¶ 12, p. 36 ¶ 15).

## B. STANDARD OF REVIEW

On a motion for summary judgment, the Court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is weighed in favor of the non-movant; it is appropriate only if the Court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c); See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Id. at 323.

Once the moving party has satisfied this initial burden, however, the non-moving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which the party will bear the burden of proof at trial. See Howard v. BP Oil Co., 32 F.3d 520, 523 (11th Cir. 1994). "Tenuous insinuation" and empty speculation based on loose construal of the evidence will not satisfy the non-movant's burden. Cf. Mesnick v. General Elec. Co., 950

F.2d 816, 820 (11th Cir. 1991), cert. denied, 504 U.S. 985 (1992).

While the Court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any" in deciding whether to grant or deny a summary judgment motion, Rule 56 "saddles the non-movant with the duty to 'designate' the specific facts in the record" supporting its claims. See Johnson v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996). "Rule 56 ... does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." Id; See also Resolution Trust Corp. v. Dunmar Corp, 43 F.3d 587, 599 (11th Cir. 1995) ("[t]here is no burden upon the district court to distill every potential argument that could be made based upon materials before it on summary judgment."), cert. denied, 516 U.S. 871, 116 S.Ct. 74 (1995).

In resolving whether a given factual dispute requires submission to the jury, the Court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. Anderson, 477 U.S. at 254-55. "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." Hairston v. Gainesville Sun Publis. Co., 9 F.3d 913, 919 (11th Cir. 1993). At the same time, "[t]he non-moving party must provide more than a mere scintilla of evidence to survive a motion for summary judgment as a matter of law; 'there must be a substantial conflict in the evidence to support a jury question.'" Tidwell v. Carter Prod., 135 F.3d 1422, 1425 (11th Cir. 1998) (citing Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989)).

## C. DISCUSSION

Under Alabama law, **the insured** bears the burden of establishing that the claimed loss is within the policy coverage provisions. See Colonial Life & Accident Ins. Co. v. Collins, 280 Ala. 373, 376, 194 So. 2d 532, 535 (1967); Universal Underwriters Insurance Co. v. Stokes, 990 F.2d 598, 602 (11th Cir. 1993). Accordingly, S&H will bear the burden of proving that the insuring agreement has been triggered by the allegations of the underlying lawsuit. Here, however, S&H cannot meet this burden. First, the majority of the claims asserted against S&H are not claims for "bodily injury" or "property damage". Second, none of the claims asserted against S&H occurred within Canal's policy period as required by Canal's policy.

1. **The claims for legal liabilities created by the allegedly forged documents, encumbrance of Mr. Barron's credit, negative reporting on Mr. Barron's credit, and collection activities directed against Mr. Barron do not Constitute "property damage" or "bodily injury" and are not Covered by Canal's policy.**

In the underlying complaint, Mr. Barron alleges that:

> "he has incurred legal liabilities created by the documents, including the responsibility and commitment to pay for a mobile home that he did not purchase; his credit has been encumbered by the loan for the 2000 mobile home; his credit has been diminished by negative reporting for late payments on the loan; collection activities have been commenced against the Plaintiff; Plaintiff has suffered anxiety, worry, mental anguish, emotional distress, inconvenience, embarrassment and other incidental damages."

(**Exhibit "A"**, pp. 4-5 ¶ 20, p. 6 ¶ 27, p. 7 ¶ 32).

Canal's policy defines "property damage" as "(a) physical injury to tangible property, including all resulting loss of use of that property ... and (b) Loss of use of tangible property that is not physically injured ..." (**Exhibit "B"**, Canal policy, p. 36 ¶ 15).

In Alabama, there is no coverage for property damage alleging only an economic loss. See American States v. Martin, 662 So. 2d 245, 248 (Ala. 1995) (no coverage for purely economic losses); Accord Thorn v. American States Ins. Co., 266 F. Supp. 2d 1346, 1353 (M.D. Ala. 2002) (no duty to defend where plaintiff's property damage was the loss of a purchase price of three pieces of equipment, loss of the benefit of a bargain and lost profits); Auto-Owners Insurance Co. v. Toole, 947 F. Supp. 1557, 1564 (M.D. Ala. 1996) (noting that a claim for breach of contract failed to allege property damage or bodily injury under a policy).

In American States v. Martin, the Supreme Court of Alabama contrasted tangible property with intangible property as follows:

> "Tangible property is that which may be felt or touched; such property as may be seen, weighed, measured, and estimated by the physical senses; that which is visible and corporeal; having substance and body as contrasted with incorporeal property rights such as franchises, choses in action, copyrights, the circulation of a newspaper, annuities and the like. Tangible property must necessarily be corporeal, but it may be either real or personal."
>
> "Intangible property is property which has no intrinsic and marketable value, but is merely the representative or evidence of value, such as certificates of stock, bonds, promissory notes, and franchises. Intangible property is quite different in nature from corporeal property, and there is an obvious distinction between tangible property and intangible property. Intangible property is held secretly; that is, it cannot be readily located, and there is no method by which its existence or ownership can be ascertained in the state of its situs, except, perhaps, in the case of mortgages or shares of stock. The value of intangible property is not easily ascertained."

American States, 662 So. 2d at 248. Tangible property can be *physically* damaged. Id.

In addition, a person's credit is *intangible* property, and damage to credit is not considered property damage under a typical liability insurance policy. See State Farm Fire & Cas. Co. v. Middleton, 65 F. Supp. 2d 1240, 1245 (M.D. Ala. 1999) (noting that "loss of business, closure of business, and loss of credit do not constitute physical injury of tangible property or loss of use of

such property").

Based on application of <u>American States</u> and <u>Middleton</u>, there is no coverage under Canal's policy for Mr. Barron's claims against S&H that he has suffered financially as a result of S&H's conduct.

Likewise, Canal's policy defines "bodily injury" as "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time." (**Exhibit "B"**, Canal policy, p. 33 ¶ 3). Here, Mr. Barron's claims for legal liabilities created by the allegedly forged documents, encumbrance of his credit, negative reporting on his credit, and collection activities directed against him are also not claims for "bodily injury" as defined by Canal's policy.[2]

Accordingly, the Court should declare that the claims for legal liabilities created by the allegedly forged documents, encumbrance of his credit, negative reporting on his credit, and collection activities directed against Mr. Barron are also not claims for "property damage" and/or "bodily injury" as defined by Canal's policy, and that Canal has no coverage for those claims and owes no duty to defend and/or indemnify S&H with respect to those claims in the underlying lawsuit.

### 2. Canal Owes No Coverage for the Underlying Lawsuit Because the Claims Asserted Against S&H did not Occur within Canal's policy period.

The underlying complaint alleges that the wrongful conduct of the defendants, including S&H, occurred on **April 11, 2000**, when Mr. Barron's name was allegedly forged on documents related to the purchase of the mobile home. (**Exhibit "A"**, pp. 2-3 ¶ 6). In addition, the underlying complaint alleges that Mr. Barron learned of the conduct in **November of 2003** when his daughter

---

[2]Canal is not contending that Barron's claims for mental anguish and/or emotional distress do not constitute "bodily injury". However, those claims are also not covered because Barron's alleged damages occurred prior to the issuance of Canal's policy, as discussed below.

Case 2:05-cv-00778-WKW-CSC   Document 27   Filed 12/20/2005   Page 11 of 15
*Canal v. WLS, INC. d/b/a S & H Mobile Homes, et. al.*
*Canal's Motion for Summary Judgment and Brief*

obtained his credit report. (**Exhibit "A"**, p. 3 ¶ 7). This was two to three months <u>before</u> Canal's policy was issued to S&H on **January 26, 2004**. (**Exhibit "B"**, Canal policy, p. 1 of 40).

Alabama cases hold that "as a general rule the time of an 'occurrence' of an accident within the meaning of an indemnity policy is *not* the time the wrongful act is committed *but the time the complaining party was actually damaged.*" See <u>American States Ins. Co. v. Martin</u>, 662 So. 2d 245, 249 (Ala. 1995) (emphasis supplied); <u>State Farm Fire & Cas. Co. v. Gwin</u>, 658 So. 2d 426 (Ala. 1995) (holding that any alleged misrepresentations by the defendants in the sale of a house regarding termites and wiring did not cause the property damage and that any emotional distress suffered by the purchasers would have only occurred *after* the termination of State Farm's policy); <u>See also</u> <u>USF&G v. Warick Development Co.</u>, 446 So. 2d 1021 (Ala. 1984) (adopting the following rule: "[a] majority of courts have held that in order to have liability under the terms of such a policy the 'occurrence' must arise during the policy period, for it is the insurance that is in force at the time of the property **damage** that is applicable rather than insurance that was in force when the work was performed."); <u>accord</u> <u>Liberty Mut. Fire Ins. Co. v. Sahawneh</u>, [No. 00-0498-M, May 11, 2001], --- F. Supp. ---, 2001 WL 530424 (S.D. Ala. 2001) (no coverage for flooding **damage** that occurred *after* the cancellation of the policy despite the fact that the wrongful conduct *before* the cancellation); <u>Alabama Liability Insurance Handbook</u>, § 8-9, p. 188 (1996) ("Alabama cases are clear that coverage is triggered when the bodily injury or property **damage** occurs during an insurer's policy period, not when the accident or event occurred.").

Here, there is no question but that Mr. Barron's alleged damages occurred <u>before</u> Canal's policy was issued, which precludes coverage for S&H. (**Exhibit "A"**, p. 3 ¶ 7; **Exhibit "B"**, Canal policy, p. 1 of 40). Mr. Barron's claims for legal liabilities created by the allegedly forged

documents, encumbrance of his credit, negative reporting on his credit, and collection activities directed against him are also not claims for "bodily injury" and/or "property damage" as defined by Canal's policy, as discussed above. Accordingly, this discussion essentially concerns whether Mr. Barron's claims for anxiety, worry, mental anguish, emotional distress, inconvenience, embarrassment and other incidental damages occurred during Canal's policy period. However, even assuming, arguendo, that each of Barron's claims is a "bodily injury" and/or "property damage", these claims ripened before Canal's policy was issued. (**Exhibit "A"**, p. 3 ¶ 7; **Exhibit "B"**, Canal policy, p. 1 of 40).

In American States v. Martin, the plaintiffs in the underlying lawsuit admitted that any mental anguish that they may have suffered would have occurred *after* an insurance policy issued by American States had already expired. Accordingly, the Supreme Court of Alabama found that there was no coverage for bodily injury claims made against the insureds. Martin, 662 So. 2d at 250.

Likewise, in North American Speciality Ins. Co. v. Universal Underwriters Ins. Co., 703 So. 2d 995 (Ala. Civ. App. 1997), the Alabama Court of Civil Appeals considered a similar issue. Universal provided liability coverage to Serra Chevrolet from June 1, 1990 to September 1, 1991. Id. at 996. North American provided liability coverage to Serra Chevrolet from September 1, 1991 to September 1, 1992.

Jane Dickinson purchased a vehicle from Serra on August 31, 1990 (*while the Universal policy was in force*) from a friend who was a salesperson. At the time of the sale, the salesperson told her that the vehicle had not been wrecked when, in fact, it had previously been totaled. Four to five days after purchasing the vehicle she began to experience problems with the truck including: (1) vibrations in the wheels and steering column, which required that she purchase new tires and get

several wheel alignments; (2) a left door that did not open and close properly; (3) a hood that did not close properly; (4) the left mirror fell off; (5) the glove compartment door fell off; (6) and the front-end tire rods were faulty. Universal, 703 So. 2d at 996-97. In March, 1991 (*while the Universal policy was in force*), Ms. Dickinson's boyfriend, who had experience with automobile body repair, told her that the truck had been repainted. Dickinson later testified that, at this point, she had an "inkling" that the truck had been involved in a prior wreck. Id. at 997.

Thereafter, between May, 1992 to August, 1992 (*after the Universal policy had expired and the North American policy was in force*), Dickinson hired an attorney to investigate the situation. She learned that the vehicle had been totaled before she purchased it and filed a lawsuit. Ultimately, the liability case settled and the Universal sued North American to recover the proceeds that it paid to settle the lawsuit. Id. at 996.

Dickinson testified that she did not suffer mental anguish until after hiring her lawyer – when she received confirmation that the vehicle had been totaled and that she had been betrayed by her friend at Serra. Universal, 703 So. 2d at 997. The Trial Court granted Universal's motion for summary judgment because it concluded that – based on Dickinson's testimony – that the mental anguish was suffered during North American's coverage period.

On appeal, the Alabama Court of Civil Appeals analyzed Dickinson's testimony and held that she did not actually suffer mental anguish until her lawyer told her that her friend at Serra Chevrolet had lied to her. The Court noted that her testimony revealed that she suffered only mere frustration with the problems that occurred with the vehicle's doors, hood, etc., during Universal's policy period. Accordingly, the Court affirmed summary judgment in favor of Universal. Universal, 703 So. 2d at 998.

Under <u>Martin</u> and <u>Universal</u>, the Court should grant summary judgment on behalf of Canal. First, there is no question but that Mr. Barron discovered that he was damaged by **November of 2003** when his daughter obtained his credit report. (**Exhibit "A"**, p. 3 ¶ 7). Because he had already been damaged two to three months <u>before</u> Canal's policy was issued to S&H on **January 26, 2004**, the damage did not occur during Canal's policy period. (See **Exhibit "B"**, Canal policy, p. 1 of 40). Therefore, Canal's motion for summary judgment is due to be granted, and the Court should declare that Canal owes no coverage to S&H for the allegations of the underlying lawsuit and that Canal has no duty to defend and/or indemnity S&H in the underlying lawsuit.

**WHEREFORE, PREMISES CONSIDERED**, the plaintiff, Canal Indemnity Company, respectfully requests that this Honorable Court grant its motion for summary judgment, and grant the relief requested in Canal's Complaint for Declaratory Judgment declaring that Canal owes no duty to defend and/or indemnify WLS, Inc. d/b/a S & H Mobile Homes with respect the underlying lawsuit, and to make the order a final order in accordance with Rule 54(b), Fed.R.Civ.P., as there is no just reason for delay.

Respectfully submitted,

_____
William A. Austill (ASB-1217-A62W)
Joseph E. B. Stewart (ASB-6903-S61J)

OF COUNSEL:
Austill, Lewis & Simms, P.C.
P.O. Box 11927
Birmingham, AL 35202-1927

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished by U.S. Mail, postage prepaid and properly addressed, on this 20TH day of December, 2005 to:

Jack J. Hall, Jr.
HALL, CONERLY & BOLVIG, P.C.
1400 Financial Center
505 20th Street North
Birmingham, AL 35203

R. Austin Huffaker, Jr.
RUSHTON, STAKELY, JOHNSON
& GARRETT, P.A.
P. O. Box 270
Montgomery, AL 36101-0270

Rickman E. Williams, III, Esq.
Pitts, Pitts, & Williams
Post Office Box 527
Selma, AL 36702-0527

John R. Bradwell
425 South Perry Street
Montgomery, AL 36104

Ruth Barron
921 South Holt Street
Mongtomery, AL 36108

_____
OF COUNSEL